AARON M. CLEFTON, Esq. (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone: 510/832-5001
info@cleftonlaw.com

Attorneys for Plaintiff
CARMEN HUGH

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CARMEN HUGH,

Plaintiff,

v.

AMBERWALK I HOMEOWNERS ASSOCIATION; ASSOCIATIONS EQUITY MANAGEMENT, INC. dba ASSOCIA EQUITY MANAGEMENT & REALTY SERVICES

Defendants.

CASE NO. 5:26-cv-1266
Civil Rights

**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**

1) **Violation of the Federal Fair Housing Act (42 U.S.C. § 3601 *et seq.*)**

2) **Violation of the California Fair Employment and Housing Act (Gov't Code § 12926 *et seq.*)**

3) **Violation of the California Disabled Persons Act (Civil Code § 54 *et seq.*)**

4) **Violation of the California Unruh Act (Civil Code § 51(b))**

**DEMAND FOR JURY TRIAL**

Plaintiff CARMEN HUGH complains of Defendants AMBERWALK I HOMEOWNERS ASSOCIATION; ASSOCIATIONS EQUITY MANAGEMENT, INC. dba ASSOCIA EQUITY MANAGEMENT & REALTY SERVICES, and alleges as follows:

1. **INTRODUCTION:** Plaintiff CARMEN HUGH brings this action against AMBERWALK I HOMEOWNERS ASSOCIATION and

ASSOCIATIONS EQUITY MANAGEMENT, INC. dba ASSOCIA EQUITY MANAGEMENT & REALTY SERVICES, the owners and operators of the condominium complex located at or around 24781 Ridgewalk Street, Murrieta, California 92562, ("Amberwalk") alleging discrimination on the basis of disability in violation of the Federal Fair Housing Act, 42 U.S.C. § 3601, et seq., and related state laws.

2. Defendants repeatedly denied and continue to deny disabled Plaintiff access to an accessible parking space and/or an assigned parking space close to her home in the Amberwalk Condo Complex. Defendants initially granted Plaintiff an allegedly "temporary" accommodation of a "reserved" parking space in the community parking lot near to her home, but they refused to provide Plaintiff with her request to place signs at the parking space which would notify the residents of the community that the space was assigned to Plaintiff. Thus, the putative "accommodation" required Plaintiff to enforce the accommodation herself. This caused significant stress to Plaintiff and otherwise unnecessary strife with her neighbors.

3. Further, Defendants refused to make Plaintiff's requested parking accommodation permanent, even though her disability worsened and became permanent. The same reasonableness that underpinned allowing plaintiff an ostensibly "temporary" parking space was later denied in favor of bureaucratic interference in making the accommodation as permanent as Plaintiff's disability.

4. Ultimately, Defendants *revoked* Plaintiff's putative accommodation of a "reserved" parking space near her home (which still did not have tow away signage). This revocation came a result of Defendants' insistence that Plaintiff reapply for the same parking accommodation even though her condition had worsened and she provided evidence of her permanent disability parking placard. Defendants demanded duplicative and unnecessary documentation, as well as inspections of an inaccessible garage that did not fit her vehicle. As a result of

Defendants' revocation of Plaintiff's request for accommodation, Plaintiff has had to park her vehicle far away from her home and walk long distances to get to and from her vehicle.

5. Defendants' disingenuous engagement in discussions around Plaintiff's requested accommodation has caused her significant stress, difficulty, and discomfort. Due to Defendants' revocation of Plaintiff's reserved parking space near her home, Plaintiff has had to park far from her home which caused her pain, exhaustion, and worsening of her physical condition. Further, Defendants' refusal to provide signage designating Plaintiff's "temporary" reserved parking place put the onus on Plaintiff to request to tow her neighbors' vehicles when they inadvertently parked in her space, which was extremely stressful and time consuming for Plaintiff. Defendants' lack of proper engagement in the process of discussing Plaintiff's requested accommodations has forced Plaintiff to forego leaving her home or ask family and friends to assist her with errands so that she did not have to walk long distances to retrieve her vehicle or to avoid moving her vehicle.

6. Plaintiff seeks an injunction compelling Defendants to grant her reasonable accommodation requests so that she can fully use and enjoy her dwelling in a manner that is substantially equal to that of other resident at the Amberwalk and to change their policies to provide reasonable accommodations to disabled tenants; damages for the injuries Plaintiff has suffered and will continue to suffer until Defendants changes their discriminatory behavior; and attorney's fees, litigation expenses, and costs as provided by statute.

7. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331 for violations of the Fair Housing Act, 42 U.S.C. sections 3601 *et seq*. This Court has jurisdiction over the pendent state-law claims brought under California law pursuant to 28 U.S.C. section 1367.

8. **VENUE:** Venue is proper in this court pursuant to 28 U.S.C.

section 1391(b) and is founded on the fact that the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

9. **INTRADISTRICT:** This case should be assigned to the Eastern Division as the real property which is the subject of this action is in this intradistrict and Plaintiff's causes of action arose in this division.

10. **PARTIES:** Plaintiff CARMEN HUGH is a "person with a disability" or "physically handicapped person." In 2022, Plaintiff had a melanoma surgically removed from the bottom of her right foot. As a result of the surgery, she is missing a portion of her right foot and has nerve damage which causes pain and difficulty while walking and standing. In 2023, Plaintiff had a serious fall which caused injuries to her neck, back, knee and shoulder. She never fully recovered from her injuries, and she now has chronic pain. Plaintiff walks with an unsteady gait, and she uses a cane, walker, or wheelchair for mobility assistance. Plaintiff's disability significantly limits her major life activities of walking, standing, balancing, and reaching.

11. Plaintiff is entitled by permit from the State of California to park any vehicle which she drives or is transported in, in a designated and properly configured disabled accessible parking space. Plaintiff is and at all relevant times was a "handicapped person" as defined by 42 U.S.C. section 3602, and a "person with a disability" as defined in 29 U.S.C. section 705(9)(B), California Government Code section 12926, the Unruh Civil Rights Act, California Civil Code section 51, the Disabled Persons Act, California Civil Code section 54.1, and Civil Code section 3345.

12. Defendant AMBERWALK I HOMEOWNERS ASSOCIATION is and was the Homeowners Association of the complex known as the Amberwalk located at or around 24781 Ridgewalk Street, Murrieta, California 92562. Plaintiff is further informed, believes and thereon alleges that the Homeowners Association is

an "owner" within the meaning of FEHA, Government Code § 12927(e), and a business establishment under the Unruh Act, Civil Code § 51.

13. Defendant ASSOCIATIONS EQUITY MANAGEMENT, INC. holds the contract to manage the Amberwalk complex and provides property management for the HOA. It is an owner and operator of the building within the meaning of fair housing laws. Plaintiff is further informed, believes and thereon alleges that ASSOCIATIONS EQUITY MANAGEMENT, INC. dba ASSOCIA EQUITY MANAGEMENT & REALTY SERVICES is an "owner" within the meaning of FEHA, Government Code § 12927(e), and a business establishment under the Unruh Act, Civil Code § 51.

14. **FACTUAL STATEMENT:** Plaintiff is a tenant residing at the Amberwalk condominium complex ("Amberwalk") in Murrieta, California. Amberwalk is a residential community consisting of approximately 120 residential units. The complex was constructed in approximately 2005 or 2006 and contains a community parking lot with approximately forty to fifty parking spaces open to residents and visitors. Additionally, each unit at Amberwalk includes garage parking intended for resident use. These garages do not have accessible width for persons with disabilities who need space to embark and disembark their vehicles.

15. Plaintiff moved into her residence at Amberwalk in June 2022. Plaintiff's unit includes two single-car garages. However, the garages are extremely narrow and were not accessible for the disabled Plaintiff when she uses her vehicles. Plaintiff's household vehicles included a sport utility vehicle ("SUV") and a minivan, both of which were too large to safely park in the garages and allow Plaintiff to exit the vehicle. Upon moving in, Plaintiff generally parked her vehicle in one of the open parking spaces available to the community.

16. In September 2023, Plaintiff suffered a fall that caused significant injuries to her neck, back, knee, and overall mobility. Following the fall, Plaintiff experienced chronic pain and difficulty walking long distances. In the immediate

aftermath of her injuries, Plaintiff was issued a temporary disabled parking placard. At the time Plaintiff was issued her disabled parking placard, the community parking lot at Amberwalk included two designated accessible parking spaces, and she was able to utilize those spaces with her placard. One of the spaces was approximately 50 feet from her home.

17. In March 2024, Defendants repaved the community parking lot and removed one of the two accessible parking spaces, the one close to her home. The only remaining accessible parking space was located approximately 250 to 300 feet away from Plaintiff's residence, significantly increasing the walking distance required for Plaintiff to access her home. The removal of the accessible parking space near Plaintiff's residence substantially interfered with Plaintiff's ability to safely access and use her housing.

18. In approximately August or September of 2024, Plaintiff contacted the homeowners' association ("HOA") and its management to request that the accessible parking space near her residence be reinstalled. Plaintiff explained that she could not safely use her garage because the limited width prevented her from opening her vehicle door wide enough to exit the vehicle given her disability and mobility limitations. Rather than reinstalling the removed accessible parking space, Defendants offered Plaintiff a different accommodation: a reserved parking space located near Plaintiff's residence in the same location where the accessible space had previously been located.

19. In October 2024, Defendants officially approved Plaintiff's use of a "reserved" parking space in the community parking lot because it was near her residence. It was the same space that had previously been designated as an accessible space before the repaving of the lot. However, Defendants refused Plaintiff's request that the reserved space include posted signage indicating that the space was reserved due to disability and that unauthorized vehicles could be towed. Instead, Defendants merely painted the word "RESERVED" on the asphalt surface

of the parking space in white paint. Plaintiff repeatedly informed Defendants that this approach was ineffective and would not deter other residents from parking in the space. Plaintiff's concerns proved correct. Other residents frequently parked in the space, despite the paint marking, preventing Plaintiff from using it.

20. Between approximately October 2024 and December 2024, Plaintiff repeatedly requested that Defendants install signage indicating that the space was reserved and subject to towing enforcement. Defendants denied Plaintiff's request for signage and did not provide an explanation for the denial. Because Defendants refused to install signage or implement effective enforcement procedures, Plaintiff was forced to personally confront residents parking in the space or attempt to arrange towing of vehicles herself.

21. On or about December 12, 2024, Plaintiff informed Defendants that she had been issued a permanent disabled parking placard. Presentation of this placard made Plaintiff's disability and her need for parking accommodation obvious and known to Defendant. In response and confirming that her accommodation based on her permanent disability had been granted by conduct, on or about December 17, 2024, Defendants, through their management company, provided Plaintiff with a letter authorizing Plaintiff to have unauthorized vehicles towed from the reserved parking space. This conduct and letter show that Defendant was aware of Plaintiff's permanent disability from her placard, but that they (unlawfully) still intended for her to continue policing the parking space herself.

22. Obtaining the parking placard by law required certification by a medical professional, and for that medical professional to agree that her disability had nexus with requiring the use of public disabled parking places as an accommodation. These facts, combined with the Defendants' knowledge that they had removed a disabled parking space precisely where the "RESERVED" space was located, meant no further factual inquiry was required nor permitted by law.

The fact that this "reserved" parking space was located almost exactly where the prior disabled parking space was located meant the accommodation was also obvious.

23. Defendants' enforcement letter given to Plaintiff to police the parking in her reserved space continued to place the burden of enforcement on Plaintiff herself. The letter did not create a clear enforcement structure and required Plaintiff to initiate towing of vehicles belonging to neighbors in order to use the space. This arrangement created unnecessary conflict with other residents and caused Plaintiff significant stress and anxiety. Towing enforcement proved very difficult in practice. Moreover, a sign was an obvious accommodation to protect the parking space from being occupied by non-disabled users.

24. Despite the fact that Defendants had ratified the permanency of the parking accommodation by their awareness and conduct, and despite that Plaintiff's permanent parking placard made it obvious that there had been a medically verified nexus between her disability and the need for accessible parking, Defendants unlawfully began relitigating her accommodation. They made a series of intrusive and unnecessary demands to justify removing her parking space. Tellingly, this occurred only *after* Plaintiff threatened an individual with the towing authorization letter Defendants gave her to enforce her parking accommodation. Unbeknownst to Plaintiff, her threat to the individual taking her space was one of Defendants' own employees.

25. On or about March 18, 2025, Kelli Jones, one of Defendants' employees, parked in Plaintiff's reserved space. She hostilely confronted Plaintiff when Plaintiff attempted to address the issue with her, citing Defendants' tow authorization. During the interaction, Ms. Jones committed a battery against Plaintiff and forcibly removed Plaintiff's accommodation letter from Plaintiff's hand. She demanded explanations from Plaintiff regarding the reserved space. Plaintiff tried to explain the situation to Ms. Jones, but she did not believe Plaintiff.

The incident escalated tensions between Plaintiff and Defendants.

26. On April 8, 2025, almost four months after Plaintiff provided proof of her permanent disability through her parking placard, Defendants, through counsel, sent Plaintiff a letter stating that they needed to reevaluate Plaintiff's parking accommodation. Unsurprisingly timed after the incident between Plaintiff and Ms. Jones, Defendants asserted that Plaintiff's previously approved reserved parking space had been granted only on a "temporary" basis. Defendants now requested that Plaintiff provide additional medical documentation beyond the medically authorized parking permit, and they unilaterally scheduled an inspection of Plaintiff's garage.

27. On April 15, 2025, Plaintiff, although not legally required to do so, responded to Defendants' request for further information. Plaintiff provided responses to Defendants' questions regarding her disability and need for parking accommodation both through responses to Defendants' questionnaire from her home health aide and her own responses to Defendants' questions. Plaintiff also explained that her garages were one-car garages that were too small for her to safely park in and enter or exit the vehicle due to her disability and the limited clearance available.

28. On April 18, 2025, Defendants responded that Plaintiff's provided documentation was insufficient to support her requested accommodation for an assigned parking space in the community parking lot. Defendants reiterated their need to "inspect" Plaintiff's garages and questioned the validity of the medical documentation she provided from her previous home health aide, despite that Defendants' previous request had stated that third-party verification could be provided by individuals providing "home supportive services."

29. On April 30, 2025, Plaintiff sent Defendants a letter reiterating her request for clear towing and enforcement procedures for her reserved parking space and requesting installation of signage at the parking space to deter unauthorized

parking. Defendants did not implement the requested measures.

30. On May 30, 2025, Defendants, through counsel, sent Plaintiff a letter stating that her prior parking accommodation had been granted only on a temporary basis and that they were denying her request for a permanent accommodation unless Plaintiff permitted the association to proceed with further "interactive investigations." Defendants also informed Plaintiff that she would need to restart the accommodation process by submitting a new written request for accommodation to Defendants.

31. In July 2025, Plaintiff filed a complaint with the California Civil Rights Department ("CRD"). Plaintiff's goal in filing the complaint was to obtain assistance mediating the dispute with Defendants and stabilizing the accommodation that had previously been granted. Defendants refused to meaningfully participate in the CRD conciliation process. On November 6, 2025, CRD administratively closed Plaintiff's complaint without reaching the merits.

32. Between July 2025 and January 2026, Plaintiff did not receive any substantive communication from Defendants regarding her accommodation requests.

33. On January 14, 2026, Defendants sent Plaintiff a letter informing her that the reserved parking accommodation would be revoked effective January 20, 2026. On January 24, 2026, Defendants removed the paint marking Plaintiff's space as "RESERVED," eliminating the accommodation entirely.

34. Without a nearby reserved parking space, Plaintiff is frequently forced to park far from her residence, particularly during evening hours when parking availability decreases. The increased walking distance causes Plaintiff physical pain and instability due to her disability. The prolonged dispute and Defendants' actions have also caused Plaintiff significant emotional distress and exacerbated her anxiety.

35. The Fair Housing Act and California law require housing providers to

engage in a good faith interactive process with tenants who request reasonable accommodations for disabilities. Plaintiff repeatedly communicated with Defendants regarding her need for accessible parking near her residence due to her mobility limitations. Although Defendants granted Plaintiff temporary use of a "reserved" parking space in the community parking lot, Defendants refused Plaintiff's repeated requests for basic enforcement measures that would allow the accommodation to function, including installation of signage indicating that the space was reserved and subject to towing enforcement. Plaintiff repeatedly notified Defendants that the accommodation was not functioning and requested reasonable modifications to make the accommodation effective. Defendants repeatedly foisted enforcement responsibility onto Plaintiff rather than engaging in meaningful negotiations to find a reasonable solution. Then, Defendants ultimately revoked Plaintiff's minimal accommodation without explanation or discussion.

36. At all relevant times, Plaintiff acted in good faith to provide information and cooperate with Defendants in addressing her disability-related parking needs. Defendants, by contrast, failed to engage in a meaningful interactive process and instead delayed, rejected reasonable documentation, shifted enforcement burdens to Plaintiff, and ultimately revoked the accommodation. Defendants' conduct constitutes a failure to engage in the interactive process as required by the Fair Housing Act and California law.

37. Defendants' refusal to accommodate Plaintiff has caused her significant pain, difficulty, stress, exhaustion, and physical injury and exacerbation of her condition.

38. As a result of Defendants' discriminatory policies, Plaintiff often chooses not to leave her home for fear that she will not be able to find a parking space near her dwelling when she returns. Plaintiff has become more isolated as a result of Defendants' refusal to provide her with accommodations. She often has to rely on her family to assist her with errands in order to avoid the pain associated

with walking to and from her vehicle when it is parked far away or risk moving her car when she has a close parking space.

39. As a result, Plaintiff has been forced to file this lawsuit to enforce her right to fair and equal access under the Federal Fair Housing Act and California law.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE FEDERAL FAIR HOUSING ACT**
**(42 U.S.C. § 3601 *et seq.*)**

40. Plaintiff replead and incorporate by reference, as if fully set forth again below, the factual allegations contained in Paragraphs 1 through 39, above, and incorporates them here by reference as if separately repleaded hereafter.

41. Amberwalk is a "dwelling" within the meaning of the Fair Housing Act (FHA). 42 U.S.C.A. § 3602.

42. Based on the above, Defendants have violated the protections afforded to Plaintiff under the FHA, including, but not limited to, the following:

a. Failing and refusing to make reasonable accommodations in policies, programs, and procedures when such is necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling;

b. Failing and refusing to provide sufficient accessible parking spaces to service Amberwalk; and

c. Harassment of retaliation against Plaintiff for her reasonable accommodation request.

43. Defendants had actual knowledge that Plaintiff is a person with a disability. Plaintiff affirmatively requested several accommodations including that Defendants provide a second designated accessible parking space near to her dwelling, that she be assigned a parking space in the parking lot near her dwelling, and requesting that a sign be erected designated the parking space as reserved. Defendants refused and/or failed to respond Plaintiff's requests for accommodation,

and they, when they granted her a limited accommodation, they ultimately revoked it.

44. Defendants maintain a pattern and practice of denying Plaintiff full and equal access to his dwelling by failure to maintain accessible parking areas, and failure to respond appropriately to requests for accommodation. 42 U.S.C.A. § 3604(f)(3).

45. For these reasons, Plaintiff is entitled to actual damages, punitive and exemplary damages and injunctive relief as set forth below.

WHEREFORE, Plaintiff prays for damages and injunctive relief as stated below.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
**(*Cal. Government Code § 12955 et seq.)***

46. Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 45 of this Complaint and incorporates them here as if separately re-pleaded.

47. The Fair Employment and Housing Act (FEHA) prohibits discrimination on the basis of disability in housing. Gov.C. § 12955 *et seq*.

48. Amberwalk is a "housing accommodation" within the meaning of FEHA. Cal. Gov't Code § 12927.

49. Based on the above, Defendants have violated the protections of FEHA as follows:

a. Failing and refusing to make reasonable accommodations in policies, programs, and procedures when such is necessary to afford Plaintiff an equal opportunity to use and enjoy the dwelling;

b. Failing and refusing to provide sufficient accessible parking spaces to service Amberwalk; and

c. Harassment of retaliation against Plaintiff for her reasonable accommodation request.

50. Based on the above, Plaintiff is entitled to actual damages, punitive and exemplary damages and injunctive relief as set forth below.

WHEREFORE, Plaintiff prays for damages and injunctive relief as stated below.

**THIRD CAUSE OF ACTION:**
**VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT**
**(Cal. Civ. Code § 54 *et seq*)**

51. Plaintiff repleads and incorporates by reference, as if fully set forth again below, the allegations contained in Paragraphs 1 through 50 of this Complaint and incorporates them here as if separately re-pleaded.

52. The Disabled Persons Act (DPA) requires, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Civ.C. § 54.1(b)(1).

53. The condominium complex is a housing accommodation under Civil Code section 54.1(b)(2). Plaintiff is a person with a disability within the meaning of the DPA.

54. For these reasons, Defendants have violated the DPA as follows:

a. Denying Plaintiff full and equal access to her housing accommodations, (Civ.C. § 54.1(b)(1));

b. Refusing to "make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." (Civ.C. § 54.1(b)(3)(B));

c. Failing to maintain the accessible features of their property, such as the parking; and

d. Failure and refusal to provide sufficient accessible parking spaces and an accessible parking program at the building.

55. Plaintiff has suffered actual damage as a result of such failures which she alleges stems from Defendants' knowing and intentional violation of her rights as a disabled person under California Law.

56. Based on the above, Plaintiff is entitled to statutory damages, actual damages, punitive and exemplary damages as set forth below.

WHEREFORE, Plaintiff requests relief as outlined below.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF UNRUH CIVIL RIGHT ACT**
**(Cal. Civ. Code § 51 *et seq.*)**

57. Plaintiff repleads and incorporate by reference, as if fully set forth again below, the allegations contained in Paragraphs 1 through 56 of this Complaint and incorporates them here as if separately re-pleaded.

58. At all times mentioned, the Unruh Civil Rights Act, California Civil Code 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

59. The building is a business establishment and Plaintiff is a person with a disability within the meaning of the Unruh Act.

60. Defendants violated the Unruh Act by its acts and omissions, including, but not limited to, the following:

a. Failure and refusal to modify the policies and procedures as necessary to ensure Plaintiff full and equal access to the accommodations, advantages, facilities, privileges, or services;

b. Failure and refusal to construct and/or alter the building's

facilities in compliance with state building code and state housing requirements;

c. Failing to maintain the accessible features of their property, such as the accessible parking; and

d. Failure and refusal to provide sufficient accessible parking spaces and an accessible parking program at the building.

61. Plaintiff is informed, believes and thereon alleges that Defendants' behavior, as alleged here, was intentional: Defendants were aware or were made aware of their duties to refrain from establishing discriminatory policies and barriers preventing physically disabled persons from accessing its facilities, before this Complaint was filed.

62. Defendants' refusal to provide disabled residents with assigned accessible parking spaces in violation of the laws set forth above, demonstrates a knowing and conscious disregard for the law in general and an intentional denial of rights of disabled residents in particular. Such conduct justifies an award of treble, punitive and exemplary damages along with all other relief sought.

WHEREFORE, Plaintiff requests relief as outlined below.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged here, unless Plaintiff is granted the relief she requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff CARMEN HUGH prays for judgment and the following specific relief against Defendants:

1. An order enjoining Defendants, their agents, officials, employees, and all persons acting in concert with them:

   a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

   b. To provide a policy and procedure consistent with California and federal law to provide reasonable accommodations for persons with disabilities who live at the complex or who wish to do so, including assign disabled Plaintiff an accessible parking space in the parking lot of the complex;

   c. To modify the building's facilities to provide full and equal access to tenants with physical disabilities in accordance with 42 U.S.C. § 3604(f)(C)(4) and Chapter 11A of the California Building Code, and to maintain such accessible facilities once they are provided;

   d. To train Defendants' employees and agents in how to accommodate the rights and needs of physically disabled persons;

   e. To implement nondiscriminatory protocols, policies, and practices for accommodating persons with mobility disabilities;

2. Retain jurisdiction over the Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of here no longer occur, and cannot recur;

3. Award to Plaintiffs all appropriate damages, including, but not limited to, statutory damages, general damages, and treble damages in amounts within the jurisdiction of the Court, all according to proof;

4. Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

5. Award prejudgment interest under Civil Code section 3291; and

6. Grant any other relief that this Court may deem just and proper.

Date: March 18, 2026

CLEFTON DISABILITY LAW

*/s/ Aaron Clefton*
By AARON CLEFTON, Esq.
Attorney for Plaintiff
CARMEN HUGH

**JURY DEMAND**

Plaintiffs demands a trial by jury for all claims for which a jury is permitted.

Date: March 18, 2026

CLEFTON DISABILITY LAW

*/s/ Aaron Clefton*
By AARON CLEFTON, Esq.
Attorney for Plaintiff
CARMEN HUGH